**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**


Civil Case No. 1:13-cv-00480-RBJ-GPG

MICHELE HAFFEY

      Plaintiff,

v.

CAROLYN COLVIN
Commissioner of Social Security

      Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---


**Gordon P. Gallagher, United States Magistrate Judge**


This civil action comes before the Court pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, for review of the Commissioner of Social Security's final decision denying Plaintiff, Ms. Haffey's, application for Disability Insurance Benefits ("DIB"). Pursuant to the Order of Reference dated September 18, 2013, this civil action was referred to the Magistrate Judge to "submit proposed findings of fact and recommendations for rulings regarding Plaintiff's appeal of the Social Security Administration's final determination." (*See* Doc. # 22). The Court has reviewed the Complaint (filed February 22, 2013) (Doc. # 1), Defendant's Answer (filed April 29, 2013) (Doc. # 13), Plaintiff's Opening Brief (filed June 27,

2013) (Doc. # 16), Defendant's Response Brief (filed July 31, 2013) (Doc. # 17), Plaintiff's Reply Brief (filed August 15, 2013) (Doc. # 18), the entire case file, the administrative record, and the applicable law and is sufficiently advised in the premises. Based upon the entirety of the record, the Court RECOMENDS that the Commissioner's final decision be AFFIRMED and this civil action be DISMISSED, with each party to bear her or his own fees and costs [1].

I.      Procedural History

On August 9, 2010, Ms. Haffey filed an application for disability insurance benefits ("DIB") under Title II of the Act. (*See* Record at p. 63). Ms. Haffey alleged that she became disabled on June 6, 2012 at the age of 58 due to mental and emotional conditions, depression, severe asthma, immobility of her left arm and PTSD. (*See* Record at p. 63). The claim was denied at the initial determination stage on December 15, 2010 and Ms. Haffey requested a hearing on December 28, 2010. (*See* Record at p. 20). Administrative Law Judge William Musseman ("ALJ") held a hearing on February 7, 2012. (*See* Record at p. 20). Ms. Haffey was represented by counsel and testified at the hearing. (*See* Record at p. 20). Mr. Dennis Duffin testified at the hearing as a vocational expert ("VE"). (*See* Record at p. 20). The ALJ issued his written decision on February 29, 2012, concluding that Ms. Haffey was not disabled under the Act because:

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

a.  "[She] has the residual function capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant is limited to indoor work only, involving minimal dust, smoke, and fumes and involving no complex tasks, defined as a Specific Vocational Preparation ("SVP") level of 4 or less." (*See* Record at p. 25); and

b.  "The claimant is capable of performing past relevant work as a telemarketer. This work does not require the performance of work related activities precluded by the claimant's residual function capacity (20 C.F.R. 404.1565)." (*See* Record at p. 30); and

c.  "The claimant has not been under a disability, as defined in the Social Security Act, from June 6, 2010, through the date of this decision (20 C.F.R. 404.1520(f)." (*See* Record at p. 31).

Ms. Haffey requested review of the ALJ's decision. (*See* Record at p. 3). The Appeals Council denied Ms. Haffey's request for review. (*See* Record at p. 3). The Appeals Council did consider additional evidence submitted as exhibit 12F, medical evidence of record – Peak Vista Community Health Centers, May 23, 2011 to October 28, 2011. (*See* Record at p. 7); The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Neilson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Ms. Haffey filed this action on February 22, 2013. The Court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

II.     Standard of Review

        In reviewing the Commissioner's final decision, the court must "closely examine the record as a whole to determine whether the . . . decision is supported by substantial evidence and adheres to applicable legal standards." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (internal quotation marks and citation omitted); *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (court "must determine whether the . . .  decision of nondisability, reached through action of the Appeals Council, is supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citation omitted); *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) ("Substantial evidence is more than a scintilla, but less than a preponderance; . . .") (citation omitted).  The court "must affirm . . . if the decision is supported by substantial evidence." *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988) (citing  42 U.S.C. § 405(g)).  The court "may neither reweigh the evidence nor substitute [its] judgment for the [Commissioner's]." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001). *See also Mounts v. Astrue*, No. 11-1172, 2012 WL 1609056, at * 8 (May 9, 2012) (court cannot reweigh the evidence and come to a different conclusion than the ALJ) (citation omitted).

III.    Ms. Haffey's Challenge to ALJ's Decision

        An individual is eligible for DIB benefits under the Act if she is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1).  An individual "shall be determined to be under a disability only

if [her] physical or mental impairment or impairments are of such severity that [she] is not only

unable to do [her] previous work but cannot, considering [her] age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national

economy. . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has developed a five-step evaluation process for determining whether

a claimant is disabled under the Act.  *See Williams*, 844 F.2d at 750-52 (describing the five steps

in detail).  "If a determination can be made at any of the steps that a claimant is not disabled,

evaluation under a subsequent step is not necessary."  *Id.* at  750.  "The claimant bears the

burden of proof through step four of the analysis."  *Neilson*, 992 F.2d at 1120.  At step four of

the evaluation process, an ALJ must determine a claimant's Residual Functional Capacity

("RFC") and then compare the RFC to his or her past relevant work.  The RFC is what a

claimant is still "functionally capable of doing on a regular and continuing basis, despite [her]

impairments; the claimant's maximum sustained work capability."  *Williams*, 844 F.2d at 751.

At step four, a claimant has the burden of showing he or she cannot return to his or her past

relevant work, that is, his or her specific job or that type of work in general.  20 C.F.R.

404.1520;  *Neilson*, 992 F.2d at 1120;  *Jozefowicz v. Heckler*, 811 F.2d 1352, 1356 (10th Cir.

1987) (citations omitted).

At step five, the burden shifts to the Commissioner to show that a claimant can perform

work that exists in the national economy, taking into account his or her residual functional

capacity (RFC), age, education, and work experience.  *Neilson*, 992 F.2d at 1120.

> . . . A claimant's RFC to do work is what the claimant is still functionally
> capable of doing on a regular and continuing basis, despite his impairments: the
> claimant's maximum sustained work capability.  The decision maker first
> determines the type of work, based on physical exertion (strength) requirements,
> that the claimant has the RFC to perform.  In this context, work existing in the
> economy is classified as sedentary, light, medium, heavy, and very heavy.  To

determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .

If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing.  However, . . . [t]he decision maker must then consider all relevant facts to determine whether the claimant's work capability is further diminished in terms of jobs contraindicated by non-exertional limitations. . .

Non-exertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain. . . .

*Williams*, 844 F.2d at 751-52.

Following the five-step evaluation process, the ALJ determined that Ms. Haffey:

(1)  meets the insured status of the Social Security Act through December 31, 2014 (*See* Record at p. 22); and

(2) has not engaged in substantial gainful activity since June 6, 2010 (*See* Record at p. 22); and

(3) has the following severe impairments: affective disorder and asthma (*See* Record at p. 22); and

(4)  does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F. R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526 (*See* Record at p. 23); and

(5) has the RFC to perform a full range of work with certain non-exertional limitations regarding minimal dust, smoke and fumes and involving no complex tasks (*See* Record at p. 25); and

(6) is capable of performing past relevant work as a telemarketer (*See* Record at p. 30).

Ms. Haffey challenges the ALJ's determination at step four of the evaluation process, claiming that the Commissioner erred by failing to properly determine her RFC.

IV.     Analysis

At step four, Ms. Haffey has the burden of showing she cannot return to her past relevant work or that type of work in general.   Before the ALJ assessed whether Ms. Haffey could perform her past relevant work, the ALJ had to determine her RFC "based on all the relevant medical and other evidence" in the case record.  20 C.F.R.  404.1520(a)(iv).  RFC determinations are for the ALJ to make "based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints."  *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009);  *See also* 20 C.F.R. § 404.1546 (ALJ is responsible for assessing residual functional capacity);  *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (when determining claimant's credibility and assessing his residual functional capacity, the ALJ properly considered "all" of the evidence, both medical and nonmedical, as he was required to do).

At step four, the ALJ found that Ms. Haffey had the RFC to: perform a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant is limited to indoor work only, involving minimal dust, smoke, and fumes and involving no complex tasks defined as a SVP level of 4 or less.  (*See* Record at p. 25).  Ms. Haffey argues that the ALJ erred in evaluating her RFC.

1.      Medical Record

On June 12, 2009, Ms. Haffey saw David Bird, M.D. for an upper respiratory infection ("URI").  Dr. Bird prescribed various medications for the URI infection.  In addition, it was noted that Ms. Haffey's asthma was stable and that her depression was stable.  (*See* Record at pp. 235-237).

On July 19, 2009, Ms. Haffey had an imaging study done on her left hand following a dog bite.  The imaging study indicated normal alignment, with joint spaces well maintained.  The study was negative for any fractures.  There was no significant soft tissue abnormality.  (*See* Record at p. 195).

On July 19, 2009, Ms. Haffey had an imaging study done on her left humerus following a dog bite.  The imaging study indicated normal alignment.  The study was negative for any fractures.  There was no significant soft tissue abnormality.  (*See* Record at p. 197).

On July 21, 2009, Ms. Haffey saw Kurt Lesh, M.D. with regard to the dog bite and an upper respiratory infection.  She was taught how to clean the wound and prescribed medication for the URI infection.  (*See* Record at pp. 233-234).

On August 13, 2009, Ms. Haffey saw Kurt Lesh, M.D. for a follow-up regarding the dog bite.  Ms. Haffey was suffering from some significant pain.  She was put on Aleve.  (*See* Record at p. 232).

On August 26, 2009, Ms. Haffey saw David Bird, M.D. for a follow-up regarding the dog bite.  It was noted that the wound was healing nicely and that it was expected that the discomfort would resolve.  (*See* Record at p. 231).

On September 25, 2009, Ms. Haffey saw David Bird, M.D. for a medication follow-up. With regard to Ms. Haffey's irritability, depression and anxiety, Dr. Bird noted that she was doing well at that time.  With regard to the dog bite it was expected that the pain would resolve but that there would be scarring.  (*See* Record at pp. 227-228).

On September 15, 2009, Ms. Haffey saw David Bird, M.D. for a medication follow-up. Ms. Haffey was anxious and having trouble sleeping.  Changes were made to her medication in that BuSpar was added.  It was noted that the dog bite was healing and would be monitored. (*See* Record at pp. 229-230).

On December 17, 2009, David Bird, M.D. faxed a brief note to a utility provider indicating that Ms. Haffey had asthma and would not do well without electricity.  (*See* Record at pp. 224-225).

On January 15, 2010, Ms. Haffey saw David Bird, M.D. for a medication follow-up.  It is noted that she was not then having any current struggles with depression.  She had been awakening every morning depressed and crying for a year after her son died.  She decided her son would not like that so "[she] decided not to do that."  (*See* Record at p. 220).  Ms. Haffey was still having some discomfort from the dog bite.  That pain was noted as persistent especially at the medial epicondyle.  Dr. Bird stated that "she is taking a turn for the positive by not thinking about her son in the manner she has in the past, but using her son as a reason to get out and about and stop crying all the time."  (*See* Record at pp. 220-221).

On January 28, 2010, Ms. Haffey saw David Bird, M.D. for an upper respiratory infection.  An additional visit with Susanne Galvin, P.A. occurred on March 8, 2010 for the same issue.  (*See* Record at pp. 216-219).

On March 22, 2010, Ms. Haffey saw David Bird, M.D. because of an upper respiratory infection. Cipro was prescribed for this condition. In addition, Dr. Bird dealt with issues relating to asthma, accommodations which were being made at work for this, Symbicort which was prescribed for this as well as a notation that Ms. Haffey may be requesting FMLA for this condition. (*See* Record at p. 213-214).

On April 5, 2010, Ms. Haffey saw Susanne Galvin, P.A. for a follow-up regarding irritability. Ms. Haffey was having issues with concentration at work, stress, depression and sleep issues, and motivation issues. Counseling was engaged in by Ms. Galvin and Ms. Haffey was prescribed Celexa. (*See* Record at pp. 211-212).

On April 29, 2010, Ms. Haffey saw Susanne Galvin, P.A. for a follow-up regarding depression and stress. Ms. Haffey was having issues regarding her medication, stress and environmental factor issues at work and issues regarding finances. Ms. Galvin spent time counseling Ms. Haffey, reviewed the medications and made a recommendation for Ms. Haffey to see a psychiatrist. (*See* Record at pp. 209-210).

On June 9, 2010, Ms. Haffey saw Susanne Galvin, P.A. for a follow-up regarding various issues. Ms. Haffey's asthma medications, Proventil and Symbicort, were refilled and it was noted that the medications were working, the asthma was controlled and there were no adverse effects. Ms. Haffey was taking Allegra and Optivar. These medications were working and were refilled. Ms. Haffey had her Wellbutrin and Lorazepam refilled. She was having no adverse effects from the medication. She reported having a hard time since the end of her employment but her mood was stable, in some ways better than when she was working as she was stressed out at work. Her appetite was stable. She had no difficulty concentrating or finishing tasks. She had her Ambien refilled. She reported sleeping difficulties due to pain in her left shoulder. She

believed she had slept wrong on that shoulder.  The shoulder exam found the issue to be benign and no X ray was done.  It was believed that the symptoms would resolve with conservative care.  (*See* Record at pp. 203-206).

On August 10, 2010, Ms. Haffey saw David Bird, M.D. for a medication follow-up.  Dr. Bird's assessment was that Ms. Haffey had some irritability secondary to anxiety and that there was a probable depression component.  Ms. Haffey was continued on Lorazepam and prescribed Pristiq.  In addition, Dr. Bird saw Ms. Haffey regarding her left shoulder strain and did not believe that there was any involvement of the rotator cuff or of the bony part of the joint.  (*See* Record at pp. 200-201).

On May 20, 2011, Ms. Haffey saw Meghan Cogswell, P.A. for issues related to diarrhea and anxiety.  Her allergies and asthma were also noted.  Lorazepam was refilled.  (*See* Record at pp. 283-286).

On May 23, 2011, Ms. Haffey saw Dr. Reiser of Colorado Springs Allergy and Asthma Clinic with regard to a rash.  Ms. Haffey had previously participated in a "patch" study with that clinic.  It was noted that the rash appeared to be focal areas of contact dermatitis.  (*See* Record at pp. 271-272).

On June 7, 2011, Ms. Haffey saw Meghan Cogswell, P.A.  for issues relating to diarrhea and a rash.  The diarrhea had resolved.  The rash was apparently related to some chemical Ms. Haffey sprayed on her bedding.  There was a discussion of her anxiety which seemed to be doing well with medication but it was suggested that at some point a taper down on the medication should be attempted with medical supervision.  (*See* Record at pp. 280-282).

On October 18, 2011, Ms. Haffey saw Meghan Cogswell, P.A. for a follow-up with anxious/ fearful thoughts, depressed mood, difficulty concentrating, difficulty falling asleep,

difficulty staying asleep, diminished interest, worrying, fatigue, depression and other issues so related.  She was recommended to make a medication change but was reluctant to do so.  Ms. Haffey was recommended to attend counseling but was reluctant to do so and stated that finances were an issue.  Certain labs were ordered.  (*See* Record at pp. 276-279).

On October 28, 2011, Ms. Haffey saw Lisa Davenport, P.A. due to a sinus infection and was prescribed a Z-pac. (*See* Record at pp. 273-275).

2.      Ms. Haffey's Hearing Testimony

Ms. Haffey testified at the hearing which was held on February 7, 2012.  Ms. Haffey testified that her prior work had included customer service in the telecommunications field.  (*See* Record at p. 38).  Ms. Haffey testified that there were times that she had issues such as dementia and panic attacks.  (*See* Record at p. 40).  Ms. Haffey testified that her son passed away.  (*See* Record at p. 40).  Ms. Haffey testified that at some point she had a breakdown and could not work.  (*See* Record at p. 40).  Ms. Haffey testified that she could not cope with everyday living such as getting up, eating, working, sleeping, anxiety attacks and depression. (*See* Record at p. 41).  Ms. Haffey testified that then both of her parents died and she was bitten by a pit-bull  (*See* Record at pp. 41-42).  Ms. Haffey testified as to participating in a patch study in order to make some quick money and getting a terrible rash.  (*See* Record at pp. 42-43).  Ms. Haffey testified as to confusion when driving for which she was prescribed Lorazepam.  (*See* Record at pp. 44-45).  Ms. Haffey testified that she had trouble with daily tasks such as cooking and cleaning and having breakdowns in such places as Walmart.  (*See* Record at pp. 46-47).  Ms. Haffey testified as to having a panic attack over the health of her dog and that activities such as getting out of the house and walking the dog could be a struggle  (*See* Record at pp. 48-50).

Ms. Haffey testified that her medications made her suicidal and more depressed.  (*See* Record at p. 52).  Ms. Haffey testified as to severe convulsions when being weaned off Lorazepam.  (*See* Record at pp. 53-54).

3.      Vocational Expert's Hearing Testimony

Mr. Dennis Duffin was present at the hearing and testified as a vocational expert ("VE").  The ALJ asked Mr. Duffin to assume a hypothetical individual the same age and with the same education and work experience as Ms. Haffey, who could: do indoor work only with minimal dust, fumes, smoke and no complex tasks defined as SVP 4 or less.  (*See* Record at p. 59).  Mr. Duffin testified that such individual could perform the duties of telemarketer.  (*See* Record at p. 59).  Mr. Duffin also testified that if the SVP was 1 or 2, the past work could not be done by the claimant.  (*See* Record at p. 59).

4.      Results of the Psychological Examination

A psychological examination was conducted of Ms. Haffey by Brett Valette, Ph.D. on October 19, 2012.  Dr. Valette opined that:  Ms. Haffey was capable of managing her own funds.  He believed that there was some evidence of cognitive difficulties and some memory difficulties.  Ms. Haffey's mental status did not look bad.  She did have some short term memory trouble.  Her processing was "very, very slow."  (*See* Record at p. 249-251).

5.      Court's Conclusions

Ms. Haffey claims that the Commissioner erred in the following ways:

a.      By failing to address the portion of Mark Berkowitz's opinion stating "even though the GAF is 55-60, it does not appear she is strong enough at this time to withstand the demands of full-time work.";

b.      By allowing to stand the ALJ's conclusion that Haffey had the RFC "involving no complex tasks, defines as a SVP level of 4 or less" which Plaintiff argues is not supported by substantial evidence;

c.      By failing to consider this matter in light of *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012).

d.      By wrongfully deciding that the Plaintiff performed her job in a satisfactory manner;

e.      By wrongfully faulting Plaintiff for failing to treat her medical conditions;

f.      By wrongfully considering the effect of her impairments as to how they limited her daily activities; and

g.      By wrongfully failing to consider the combined impact of all Plaintiff's impairments.

a.      Dr. Berkowitz's opinion as it applies to the SVP.

The Plaintiff argues that the ALJ discounted Dr. Berkowitz's opinion as to full-time work and essentially cherry picked between Dr. Berkowitz's opinion, Dr. Valette's opinion and Plaintiff's own testimony.  The evidence supports the ALJ's finding that Ms. Haffey would be limited to a SVP level of 4 or less.  In fact, the ALJ gave more credence, in this circumstance, to Plaintiff Haffey's own statements than to those of Dr. Berkowitz.  Dr. Berkowitz found that Plaintiff's restrictions were mild as to daily activities, difficulties with regard to social functioning and difficulties maintaining concentration.  (*See* Record at p. 67).  After listening to the Plaintiff testify, the ALJ found these restrictions to be moderate, thus leading to the SVP of 4 or less.  (*See* Record at p. 24).  *See Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (claimant's daily activities are a relevant factor in assessing the severity of the claimant's

symptoms).   It is hard to find fault with the ALJ's logic and decision, at least from the perspective of the Plaintiff, when the ALJ's decision gives more credence to the Plaintiff and rules more favorably on that issue.

The ALJ was also faulted for not following up on Dr. Berkowitz's statement that "even though the GAF is 55-60, it does not appear she is strong enough at this time to withstand the demands of full-time work." [2]   While Dr. Berkowitz did not believe Plaintiff would be able to work full-time at the time he authored his report, he did state that "[i]t is expected that she will continue to improve and that her condition will not be severe in seven months."  (*See* Record at p. 67).  *See*  20 C.F.R. 404.1505(a) which states that an impairment must last not less than 12 months.

In this area, the ALJ adequately developed the record, particularly in light of the extensive medical records provided discussing Plaintiff's various treatments and response to such treatments.  Also, no competent contrary information was presented to show that Plaintiff would not have the ability to work in less than 12 months.  The ALJ adequately addressed and considered Dr. Berkowitz's opinion and the ALJ's decision is supported by at least substantial evidence as to this issue.

      b.     The ALJ's conclusion that Haffey had the RFC "involving no complex tasks, defines as a SVP level of 4 or less" which Plaintiff argues is not supported by substantial evidence.

---

[2] GAF is a numeric scale of 0 through 100 used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults.  The scale is presented and described in the American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th ed. Text Revision 2000) ("DSM-IV-TR") on page 34.  The score is often given as a range, such as 61 - 70 ("Some mild symptoms (e.g., depressed mood and mild insomnia . . ."), 51 - 60 ("Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks . . .").

This determination by the ALJ and argument in opposition from Plaintiff addresses how Dr. Valette's opinion was incorporated.  Starting with Dr. Valette, he states in his opinion that "Her mental status exam does not look bad.  Overall, it is okay, but she had trouble with short-term memory.  She needed prompting on the serial 3's each time, and her processing was very, very slow."  (*See* Record at p. 251).  Plaintiff argues that the ALJ failed to appropriately incorporate this opinion, failed to develop the record in this case and that there was no reasonable connection between the opinion of Dr. Valette and Dr. Berkowitz.

That is not in fact what occurred.  The ALJ considered both the opinions of Dr. Valette and Dr. Berkowitz.  In addition, the ALJ considered the treatment notes from Plaintiff's primary care physician.  "In reaching this conclusion, the undersigned (ALJ) notes that, treatment records from the primary care provider reflect that, around the time of her alleged disability onset date, a June 9, 2010 treatment note from her primary care provide reflects that, the claimant was able to concentrate and finish tasks, and there was no difficulty in maintaining concentration. . . . [h]er thoughts were coherent, logical and goal directed.  She was attentive to the conversation,  Her speech was intelligible, clear, logical and goal directed. "  (*See* Record at p. 24).  *See Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) (opinion of a physician who saw a claimant over a period of time for purposes of treatment is generally entitled to more weight than the opinion of a physician who saw the claimant only once).  *See also* 20 C.F.R. § 404.1527(c).  *See also Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (ALJ must give controlling weight to treating physician's opinion if it is well-supported by medical findings and not inconsistent with other substantial evidence).

The ALJ adequately addressed and considered Dr. Valette's opinion and the ALJ's decision is supported by at least substantial evidence as to this issue.

c.     The ALJ's decision in light of *Chapo v. Astrue*,  682 F.3d 1285 (10th Cir. 2012).

In *Chapo*, the ALJ rejected or gave very little weight to the unopposed opinion of the treating physician.  *Id. at* 1291.  The 10th Circuit Court of Appeals stated that such an opinion can be discounted or dismissed but such a determination must be based on "specific, legitimate reasons . . ."  *Id.* (citations omitted).

What occurred in *Chapo* is entirely different from the present circumstance.  Other than the fact the *Chapo* deals with a social security disability case and both involve medical opinions, there is no other relevance of connection.

In the present case, the ALJ was presented with medical opinions from Dr. Valette, Dr. Berkowitz and substantial records from Plaintiff's own treating physicians and medical professionals.  The ALJ weighed and considered those different opinions and that different evidence in reaching a decision in this matter.

*Chapo* is not applicable and does not provide a basis for overturning the decision of the ALJ.

d.     Plaintiff argues that the ALJ wrongfully decided  that the Plaintiff performed her job in a satisfactory manner.

The ALJ stated that "[t]here is no evidence that this limited her ability to work."  (*See* Record at p. 27).  This discussion was in context of notes which were sought from Plaintiff's medical treatment providers seeking workplace accommodation for various issues.

It appears, from a consideration of the entire record and Plaintiff's testimony, that she was laid off after the company which employed her shut down.  (*See* Record at p. 41).  The medical records certainly indicate a variety of issues which were addressed by various medical professionals regarding the work place.  Despite these issues, no indication is provided that Ms. Haffey ever performed her work in less than a satisfactory manner.  Also, there is no indication that Ms. Haffey was ever discharged in any way in relationship to her medical condition.

The ALJ adequately addressed and considered this issue and the ALJ's decision is supported by at least substantial evidence as to this issue.

        e.      Plaintiff claims that the ALJ wrongfully faulted Plaintiff for failing to treat her medical conditions.

The ALJ stated that "Although claimant has an alleged inability to work due to her mental health issues, treatment records are not supportive of her allegations.  For instance, treatment records reflect no specialized treatment for her mental health issues, even though this has been recommended  . . ."  (*See* Record at p. 27).

The ALJ's statement that no specialized treatment was sought for the mental health issues is being entirely misconstrued by the Plaintiff.  In the context of the entirety of the paragraph in which it is found, it is more appropriately read as a recitation of the entirety of Plaintiff's course of treatment in this area and not as a criticism.  The ALJ was reviewing the medical treatment, Plaintiff's own claims regarding the subject and noted on the lack of specialized treatment.

The notation by the ALJ was relevant and appropriate, particularly in light of Ms. Haffey's  medical visit on October 18, 2011 when she saw Meghan Cogswell, P.A. for a follow-up with anxious/ fearful thoughts, depressed mood, difficulty concentrating, difficulty falling

asleep, difficulty staying asleep, diminished interest, worrying, fatigue, depression and other issues so related.  She was recommended to make a medication change but was reluctant to do so.  Ms. Haffey was recommended to attend counseling but was reluctant to do so and stated that finances were an issue.  (*See* Record at pp. 276-279).

The Court would also note that pursuant to 20 C.F.R. 404.1530, claimants must follow treatment recommendations from their physicians.  While the ALJ was not suggesting that Ms. Haffey had failed to do this, such a suggestion would be appropriate under 404.1530 and this Court finds that none of the acceptable reasons for failing to follow prescribed treatment under 404.1530(c) would exist in the present circumstance.

The ALJ adequately addressed and considered this issue and the ALJ's decision is supported by at least substantial evidence as to this issue.

f.      The ALJ's consideration of the effect of her impairments as to how they limited her daily activities.

During the hearing, the Plaintiff discussed her daily activities and ability to complete and/ or participate in them and limitations caused by her various issues.  (*See* Record at pp. 46-50).  The Plaintiff essentially faults the ALJ's decision making on this subject in two ways.  First, Plaintiff believes that the ALJ made credibility decisions which were not supported by the case record.  (*See* Record at p. 13).  Second, The Plaintiff argues that ability to complete household tasks is not necessarily indicative of an ability to engage in SGA and cites *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993) to support this argument.  The ALJ was in a position where he had to make a credibility determination as to Ms. Haffey's testimony.

Ms. Haffey's own evidence demonstrated that she was able to participate in a variety of activities during the period of her alleged disability, including driving, walking doing laundry, shopping, writing, cooking, performing light housework, caring for a pet, going to church, and spending time with friends.  (*See* Record at pp. 46-50).  *See Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (claimant's daily activities are a relevant factor in assessing the severity of the claimant's symptoms).  In addition to listening to Ms. Haffey's hearing testimony, the ALJ had to juxtapose that evidence with the medical records from various providers as well as the remainder of the evidence.  The medical evidence in particular does not reflect the limitations on daily activities that Ms. Haffey claims in her hearing testimony.  The ALJ made a credibility decision as to the evidence when he stated that "[t]he claimant has described daily activities and social interactions  that are not limited to the extent one would expect, given the claimant's allegation that her mental health issues prevent her from working." (*See* Record at p. 29).

Whether or not the evidence could support a different finding, there is  substantial evidence to support the ALJ's finding. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted).  The court may not reweigh the evidence and come to a different conclusion than the ALJ.  *See Mounts v. Astrue*, 2012 WL 1609056, at * 8.  There is substantial evidence in the entire record to support the ALJ's determination that Ms. Haffey's various medical issues were not severe impairments that limited her RFC.  For these reasons, the ALJ's assessment of Ms. Haffey's RFC was supported by substantial evidence and consistent with the applicable law.

g.      The Plaintiff contends that the ALJ  wrongfully failed to consider the combined impact of all Plaintiff's impairments.

In a circumstance of multiple impairments, the ALJ shall "[c]onsider the combined effect of all . . .impairments."  20 C.F.R. 404.1523.  In section four of his opinion, the ALJ reviewed each impairment and ruled that "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . ." (*See* Record at p. 23).    The ALJ then analyzed Plaintiff's asthma impairment and mental functioning impairment and determined that neither separately nor combined were the criteria met to medically equal the severity of a listed impairment.

Whether or not the evidence could support a different finding, there is  substantial evidence to support the ALJ's finding.  *See Lax supra* at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted). The court may not reweigh the evidence and come to a different conclusion than the ALJ.  *See Mounts supra* at * 8.

The ALJ's evaluation of all Ms. Haffey's complaints further support the determination. The ALJ considered her statements regarding her symptoms, the objective medical findings, the medical opinion evidence, her medications and other treatments, her daily activities, and inconsistencies between her statements and other evidence in the record."  (*See* Record at pp. 28-30).  *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) (considering work record, positive response to medical therapy, failure to seek medical treatment, use of medications, and daily activities to evaluate subjective complaints);  *and Luna v. Bowen*, 834 F.2d 161, 165-66 (10th

Cir. 1987) ("adjudicator must give full consideration to all of the evidence presented relating to subjective complaints") (internal quotation marks and citation omitted).  For these reasons, the ALJ's assessment of the combined impact of Ms. Haffey's impairments was supported by substantial evidence and consistent with the applicable law.

V.      Conclusion

The Court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Ms. Haffey was not disabled within the meaning of Title II of the Social Security Act and therefore not eligible to receive disability insurance benefits.  Accordingly, IT IS RECOMMENDED that the Commissioner's final decision be AFFIRMED and this civil action be DISMISSED, with each party to bear her or his own fees and costs.

Dated at Grand Junction, Colorado, this 23rd day of January, 2014.

_____
Gordon P. Gallagher
United States Magistrate Judge